MIKE WILLSON, JUSTICE
The jury found Charles Burt guilty of engaging in organized criminal activity because it found that he was part of a conspiracy to distribute illegal drugs in Brown County. The jury assessed his punishment at confinement for life. We affirm.
In his first issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. In his second issue, he asserts that his conviction in this case is barred by double jeopardy because of a previous conviction in Tarrant County. Within his first issue, Appellant also complains about the trial court's denial of two motions and a writ of habeas corpus, about jury charge error, and about improper closing arguments by the State. Within his second issue, he makes mention of a motion to quash and also complains about the trial court's action when it ordered consecutive sentencing. We affirm.
I. The Charged Offense
The grand jury alleged that Appellant, along with some 35 other individuals, conspired to commit the offense of possession of a controlled substance with intent to deliver, and it indicted him for engaging in organized criminal activity. A person commits the offense of engaging in organized criminal activity:
[I]f, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following: ... (5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug.
TEX. PENAL CODE ANN. § 71.02(a)(5) (West Supp. 2016); see Nguyen v. State , 1 S.W.3d 694, 695 (Tex. Crim. App. 1999). A combination is defined as "three or more persons who collaborate in carrying on criminal activities." PENAL § 71.01(a); Nguyen , 1 S.W.3d at 695.
II. Evidence at Trial
In August 2013, Carri Vickers, who had tattoos that related to the Aryan Brotherhood and the Aryan Circle and was a "featherwood," and Appellant, a member of the Aryan Brotherhood of Texas, began a romantic relationship. Appellant and *339 Vickers were also involved in the sale of illegal drugs, including methamphetamine. Appellant provided "protection" to Vickers. Vickers supplied methamphetamine to Chad Cooper, Auston Welker, and Ben Smith. Vickers stated that, per transaction, she sold approximately one pound of methamphetamine to Cooper. Vickers denied that she conducted illegal drug transactions in Fort Worth.
A. Appellant's actions in Tarrant County and his subsequent convictions in that county for three offenses.
Law enforcement personnel for the City of Fort Worth arranged a "special operation detail" that involved Vickers. A confidential informant contacted Vickers and arranged to buy ten ounces of gamma hydroxybutyrate acid (GHB); they were to meet at a gas station on Interstate 30 in Fort Worth. Appellant accompanied Vickers to the transaction, which was to occur in Fort Worth, and he brought 100 grams of methamphetamine with him for Vickers to sell to Cooper. Vickers and Appellant arrived at the gas station in Fort Worth to complete the drug deal, but they left. Law enforcement officials pursued Appellant and Vickers in a lengthy high-speed chase on the interstate. After Vickers's rental car hit another vehicle and stopped in a grocery store parking lot, she jumped out and attempted to escape on foot. The chase ended when Vickers pointed her gun at an officer; she was shot and taken to the hospital. Appellant also fled on foot, but he was quickly caught and taken into custody.
Appellant pleaded guilty in Tarrant County to three offenses: (1) possession with intent to deliver more than four grams but less than 200 grams of methamphetamine, (2) unlawful possession of a firearm by a felon, and (3) evading arrest. The trial court accepted his guilty pleas, assessed punishment at confinement for fifteen years for those three offenses, and sentenced him.
B. The grand jury in Brown County indicted Appellant for the separate offense of engaging in organized criminal activity.
After Appellant was convicted in Tarrant County, the grand jury in Brown County indicted him for the offense of engaging in organized criminal activity by conspiring to commit the offense of possession of a controlled substance with the intent to deliver. Appellant's trial counsel moved to quash the indictment on the ground that the indictment did not contain any allegation that Appellant committed any specific act in Brown County that furthered organized criminal activity in that county. The trial court denied the motion to quash. Appellant's counsel also sought a writ of habeas corpus and claimed that the organized criminal activity statute was unconstitutional as applied to Appellant. The trial court denied the relief.
At trial, after the State rested, defense counsel moved for a directed verdict in which he alleged that the State had failed to produce evidence of any overt act committed by Appellant in Brown County that furthered the conspiracy. The trial court denied Appellant's motion. At the end of trial, Appellant requested a jury charge instruction that an overt act must have been committed by Appellant, but the trial court overruled that request. In addition, the trial court denied Appellant's request for a limiting instruction on extraneous offenses and bad acts. The jury found Appellant guilty of engaging in organized criminal activity as charged in the indictment.
III. Analysis
In his first issue, Appellant claims that the trial court violated his rights to due *340 process and due course of law when it denied his motion to quash, denied his writ of habeas corpus, and denied his motion for directed verdict. Subsumed within that same issue, he also complains about jury charge error and improper closing arguments, and he also asserts a challenge to the sufficiency of the evidence. In his second and final issue, Appellant complains that the trial court violated his rights under the Double Jeopardy Clause when he was convicted twice of the same offense and that the trial court erred when it denied his motion to quash and his writ of habeas corpus. Also within that second issue, Appellant complains that the trial court erred when it ordered the sentence in this case to be served consecutively to the fifteen-year sentence that the trial court in Tarrant County imposed.
We will first note the issues that Appellant has waived due to inadequate briefing. We will then address his sufficiency challenge followed by his constitutional, double jeopardy, and consecutive sentencing complaints.
A. Appellant waived his complaints regarding the refused jury charge instructions and alleged improper closing arguments because he failed to adequately brief those issues.
In his brief, Appellant mentioned a complaint about jury instructions that he requested, but that the trial court denied, and also mentioned improper closing arguments by the State. However, he failed to adequately brief these issues and has waived them. See TEX. R. APP. P. 38.1 ; Salazar v. State , 38 S.W.3d 141, 147 (Tex. Crim. App. 2001) ; see also Penry v. State , 903 S.W.2d 715, 727 (Tex. Crim. App. 1995) ; Johnson v. State , 263 S.W.3d 405, 416 (Tex. App.-Waco 2008, pet. ref'd).
B. Issue One, Part One: Appellant challenges the sufficiency of the evidence when he asserts that the trial court erred when it denied his motion for a directed verdict.
In his first issue, Appellant complains that the trial court improperly denied his motion for directed verdict because the State's evidence was insufficient to convict him of engaging in organized criminal activity. When an appellant challenges the trial court's denial of a motion for a directed verdict, he challenges the sufficiency of the evidence. See Williams v. State , 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In this case, Appellant asserts that the State must prove that he agreed to participate in the conspiracy in Brown County and committed an overt act in Brown County in furtherance of the conspiracy.
Under Section 71.02, a person commits the offense of engaging in organized criminal activity, if he intended and conspired, as part of a criminal street gang or as part of a combination of three or more people, to establish, maintain, or participate in a combination of profits from the delivery or distribution of a controlled substance. PENAL §§ 71.01(a), .02(a)(5); Nguyen , 1 S.W.3d at 695. In addition, Article 13.21 of the Texas Code of Criminal Procedure provides that such an offense may be prosecuted in any county in which any act is committed to further the conspiracy. TEX. CODE CRIM. PROC. ANN. art. 13.21 (West 2011) ; see Ford v. State , 282 S.W.3d 256, 266 (Tex. App.-Austin 2009, no pet.) (holding that the offense of engaging in organized criminal activity may be prosecuted in any county in which any act is committed to further an objective of the combination).
In the present case, Vickers supplied methamphetamine, approximately one pound per transaction, in Brown County.
*341 She also engaged in similar transactions in "the Metroplex." Officer Joseph Hill, with the Fort Worth Police Department, testified that Appellant provided Vickers protection or "muscle" for the sale and delivery of illegal drugs and that, on the day of his arrest in Fort Worth, he intended to do just that during the sale of methamphetamine to Cooper.
In this case, the State adduced evidence that three or more people were involved in the sale and delivery of illegal drugs in the Metroplex and Brown County and that Appellant had engaged in acts to further the conspiracy that was ongoing in Brown County. Appellant is mistaken when he asserts that the State had a burden to show that he agreed to the conspiracy while in Brown County and that he also took action in Brown County to further that conspiracy. In this case, the State only needed to prove that Appellant intended to further the sale of illegal drugs in Brown County, and we hold that the State did so with sufficient evidence.
C. Issue One, Part Two: The trial court did not violate Appellant's due process rights because Sections 71.01 and 71.02 of the Texas Penal Code and Article 13.21 of the Texas Code of Criminal Procedure are not unconstitutionally vague and overbroad.
As part of his first issue, Appellant argues that the trial court denied him due process and due course of law when it denied his motion to quash and writ of habeas corpus. In particular, Appellant argues that Sections 71.01 and 71.02 of the Texas Penal Code and Article 13.21, a special venue provision of the Texas Code of Criminal Procedure, violated his due process and due course of law rights under the federal and Texas constitutions, respectively, because the laws are vague, both facially and as applied to him. PENAL §§ 71.01, .02; CRIM. PROC . art. 13.21. As we explain below, we disagree with Appellant's contentions that the trial court violated his due process rights because Sections 71.01 and 71.02 of the Texas Penal Code and Article 13.21 of the Texas Code of Criminal Procedure are not unconstitutional.
We initially note that the due course of law provision in the Texas constitution provides no greater level of protection than the federal due process clause. Therefore, we will address Appellant's complaints as a due process claim. See Salazar v. State , 298 S.W.3d 273, 278 (Tex. App.-Fort Worth 2009, pet. ref'd). Although Appellant asserts that he made a general or "facial" challenge in his pretrial motion to quash and writ of habeas corpus, he actually only made an "as applied" challenge. We note that a facial challenge may not be raised for the first time on appeal. Karenev v. State , 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). An "as applied" challenge may be brought during or after a trial on the merits. State ex rel. Lykos v. Fine , 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). Because Appellant failed to raise a facial challenge in the court below, he has not preserved that issue for appeal, but he has preserved an "as applied" challenge.
An " 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner." Fine , 330 S.W.3d at 910. "Since [a contention that a statute is unconstitutional as applied] requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the charging instrument." Id. (citations omitted) (quoting *342 Gillenwaters v. State , 205 S.W.3d 534, 536 n.4 (Tex. Crim. App. 2006) ). To prevail on an as-applied challenge, Appellant must demonstrate that the statute was unconstitutionally applied to him. Id.
When we review an attack upon the constitutionality of Sections 71.01 and 71.02 of the Texas Penal Code and Article 13.21 of the Texas Code of Criminal Procedure, we begin with the presumption that the statutes are valid and the legislature has not acted unreasonably or arbitrarily in enacting them. Ex parte Granviel , 561 S.W.2d 503, 511 (Tex. Crim. App. 1978) (en banc). The burden rests on the individual challenging the statutes to establish their unconstitutionality. Id. Every reasonable intendment should be made in favor of the constitutionality of the statute, until the contrary is clearly shown. Id. A mere difference in opinion, where reasonable minds could differ, does not provide a sufficient basis for striking down the legislation as arbitrary or unreasonable. Smith v. Davis , 426 S.W.2d 827, 831 (Tex. 1968).
In Appellant's "as applied" challenge, he contends that Sections 71.01 and 71.02 are unconstitutionally vague and overbroad because "potential defendants are not given fair notice that their actions may subject them to criminal penalties in far-away venues." This argument is unavailing in an as-applied challenge because we look at how the statute operates as to him individually. Fine , 330 S.W.3d at 910. A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. Strong v. State , 805 S.W.2d 478, 482 (Tex. App.-Tyler 1990) (citing Bynum v. State , 767 S.W.2d 769, 774 (Tex. Crim. App. 1989) ). "When words are not defined in the code, they are 'to be taken and understood in their usual acceptation in common language.' " Id. (quoting CRIM. PROC . art. 3.01). "In the organized crime statute, the legislature has specifically authorized conviction and punishment for both engaging in organized criminal activity and for any of the underlying offenses listed in section 71.02(a)." Barrera v. State , 321 S.W.3d 137, 142 (Tex. App.-San Antonio 2010, pet. ref'd).
Section 71.01(b) provides that " '[c]onspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." PENAL § 71.01(b). "An agreement constituting conspiring to commit may be inferred from the acts of the parties." Id. " Section 71.02(a) provides two means by which a defendant may engage in organized criminal activity-by either committing or conspiring to commit the underlying offense." Barrera , 321 S.W.3d at 142-43 ; see also PENAL § 71.02(a). In addition, Article 13.21 provides that the offense of engaging in organized criminal activity "may be prosecuted in any county in which any act is committed to effect an objective of the combination." CRIM. PROC . art. 13.21.
Again, Appellant argues that State offered no evidence that he agreed to the conspiracy while in Brown County and also that he committed an overt act there to further the illegal drug distribution ring in that county. We disagree that the State is required to do so to establish Appellant's guilt of engaging in organized criminal activity. Rather, the State must prove that Appellant conspired to commit an enumerated crime with the specific intent of participating in the criminal activity with a combination of persons and that he also possessed the intent to participate in the profits of the combination. PENAL § 71.02(a). And Article 13.21 of the Code of Criminal Procedure, enacted with the statute creating the organized criminal activity *343 offense, provides a special venue rule. "This is similar to the portion of the venue provision dealing with conspiracy that permits prosecution for conspiracy in " 'any county in which one or more of the conspirators does any act to effect an object of the conspiracy.' " Id. "It is intended to permit placing venue in any of a large number of counties when the combination is an extensive one. There is no requirement that the defendant have committed an act in that county because the offense can be merely agreeing to commit an enumerated offense." George E. Dix & John M. Schmolesky, 40 Texas Practice Series: Criminal Practice & Procedure § 5:26 (2016). Thus, venue is proper where the engaging in organized criminal activity occurs. See 1 D. Mark Elliston & Terrence W. Kirk, Texas Practice Guide: Criminal Practice & Procedure § 2.23 (2016); see also Ford v. State , 282 S.W.3d 256, 266 (Tex. App.-Austin 2009, no pet.).
We hold that the meaning of Sections 71.01 and 71.02 are clear and unambiguous, and although Appellant argues that Article 13.21 is inapplicable, he offers no authority in support of his position. In addition, other courts have rejected his argument that Sections 71.01 and 71.02 are unconstitutionally vague and overbroad. For instance, our sister court held in McDonald v. State that Sections 71.01 and 71.02 were not unconstitutionally vague and overbroad because the statutes only reached those that knowingly engaged in criminal activity. 692 S.W.2d 169, 172 (Tex. App.-Houston [1st Dist.] 1985, pet. ref'd) ; see Lucario v. State , 677 S.W.2d 693, 699 (Tex. App.-Houston [1st Dist.] 1984, pet. ref'd). Under Section 71.02, to engage in organized criminal activity does not mean that Appellant must have agreed to the conspiracy while physically in Brown County and that he also must commit an overt act while in Brown County. Rather, he simply must agree to participate in the conspiracy and then commit an overt act anywhere that furthered that conspiracy to engage in criminal activity in Brown County. See CRIM. PROC . art. 13.21 ; PENAL § 71.02(a). We overrule Appellant's first issue on appeal.
D. Issue Two: The trial court did not violate the Double Jeopardy Clause.
In his second issue, Appellant argues that the conviction in this case is barred by double jeopardy because he had already been convicted in Tarrant County for possession with the intent to deliver controlled substances in Tarrant County. He contends that the overt act that he committed in Tarrant County was improperly used as the predicate offense in the Brown County case and that the conviction in this case therefore ran afoul of the Double Jeopardy Clause. See Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
"The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." Ex parte Milner , 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) (citing Brown v. Ohio , 432 U.S. 161, 164-65, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ).
To apply the basic rule appears to be a much more daunting task than to state it. However, our task is made easier in the case before us by Ex parte Chaddock , 369 S.W.3d 880 (Tex. Crim. App. 2012).
In Chaddock , a grand jury indicted Chaddock for the offense of engaging in organized criminal activity. 369 S.W.3d at 882. It alleged that, as a member of a criminal street gang, he committed the offense of aggravated assault. Id. That *344 same day, the grand jury returned a second indictment against Chaddock for the same assaultive offense, but the second indictment did not contain the organized criminal activity allegation that he committed the offense as a member of a criminal street gang. Id.
The organized criminal activity case was the first to go to trial. Id. A jury heard the case and found Chaddock guilty. Id. Punishment was assessed at confinement for nineteen years and a $10,000 fine. Id. Some weeks later, Chaddock pleaded guilty to the second indictment, and punishment was set at confinement for ten years. Id.
Sometime later, Chaddock filed an Article 11.07 application for writ of habeas corpus. See CRIM. PROC . art. 11.07 (West 2015). In his application, Chaddock argued that the Court of Criminal Appeals should set aside his conviction for aggravated assault because, at the time that he was convicted for that offense, he had already been convicted of the greater-inclusive offense of engaging in criminal activity. Chaddock , 369 S.W.3d at 882. Therefore, Chaddock argued, his conviction for aggravated assault violated the Fifth Amendment's prohibition against being twice put in jeopardy of life or limb for the same offense. Id.
Judge Price authored an opinion in which Presiding Judge Keller, Judge Meyers, and Judge Johnson joined; they agreed with Chaddock. Judge Price noted that double jeopardy "protects against repeated prosecutions for the same offense (whether following conviction or acquittal at the conclusion of the first prosecution) and against multiple punishments for the same offense stemming from a single prosecution." Id. Chaddock , as is the case now before this court, is a multiple prosecutions case.
Judge Price wrote that the question before the court in Chaddock was "whether [ Section 71.03(3) of the Penal Code ] may operate constitutionally to authorize multiple prosecutions for the same offense as determined by a Blockburger analysis." Id. at 883. Under a Blockburger analysis, the test is "whether each provision requires proof of a fact which the other does not." Blockburger , 284 U.S. at 304, 52 S.Ct. 180.
In multiple punishment cases, however, Judge Price notes a difference. In the latter, even if the offenses are the "same offenses" under Blockburger , the legislature may lawfully provide for multiple punishments. As an example, Judge Price cites to Garza v. State , 213 S.W.3d 338, 351-52 (Tex. Crim. App. 2007). There, the court held "that a defendant who had been indicted both for engaging in organized criminal activity by committing capital murder and also for the underlying capital murder itself could be punished at the conclusion of a single prosecution for both offenses" regardless of the fact that they are the "same offense" under Blockburger . Chaddock , 369 S.W.3d at 883 (citing Garza , 213 S.W.3d at 351-52 ). That is so because the legislature manifested its intention that an accused should be punished for both offenses under Section 71.03(3). Id. at 352. Garza is a multiple punishments case, not a multiple prosecutions case.
We note some remarkable distinctions between the case before this court and Chaddock . Chaddock was not charged with conspiracy to commit an unlawful act but, rather, with the actual commission of the unlawful act, while belonging to a street criminal gang. Burt was charged with engaging in organized criminal activity by entering into a conspiracy to commit illegal drug offenses, including the Tarrant County transaction. The United States Supreme Court has held that "a substantive crime and a conspiracy to commit that crime are *345 not 'same offence' for double jeopardy purposes." United States v. Felix , 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).
In her concurring opinion in Chaddock , joined by Judge Alcala, Judge Cochran acknowledged this rule when she wrote: "[I]f the State had pled a conspiracy to commit aggravated assault in its organized-criminal-activity indictment, then the State could bring a successive prosecution for the completed offense." Chaddock , 369 S.W.3d at 889 ; see also Lindley v. State , 855 S.W.2d 729, 729-30 (Tex. App.-Tyler 1993, no pet.). We overrule Appellant's double jeopardy claim.
E. The trial court had the discretion to order consecutive sentences.
As part of his second issue, Appellant argues that the trial court improperly ordered "concurrent" and "consecutive"[1] sentencing of this case with Appellant's prior conviction in Tarrant County. Although Appellant focused his argument about concurrent and consecutive sentencing within the rubric of his double jeopardy claim, he also mentioned that the trial court improperly ordered cumulative or consecutive sentencing.
To the extent that Appellant infers that the trial court could not impose a consecutive sentence under Article 42.08 of the Texas Code of Criminal Procedure, he has not adequately briefed this particular issue and has waived it. TEX. R. APP. P. 38.1. However, even if Appellant had briefed it, his argument is unpersuasive because the trial court has the discretion, under Article 42.08, to cumulate the sentences for two or more convictions in separate cases. CRIM. PROC . art. 42.08(a) ; Smith v. State , 575 S.W.2d 41, 41 (Tex. Crim. App. 1979) ; Harvey v. State , 821 S.W.2d 389, 392 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd).
"When a defendant has been convicted in two or more cases, the trial court has discretion to order the judgment and sentence in the second conviction to either (1) begin to run after the judgment and sentence imposed in the preceding conviction ceased to operate, or (2) run concurrently with the judgment and sentence imposed in the preceding conviction." Bargas v. State , 252 S.W.3d 876, 902 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (citing CRIM. PROC . art. 42.08(a) ). Because Appellant was first sentenced in Tarrant County in a separate conviction for a separate offense from the subsequent conviction for engaging in organized criminal activity in Brown County, the trial court could cumulate that sentence in this case and order that it be served consecutively to the Tarrant County conviction. We overrule Appellant's second issue.
IV. This Court's Ruling
We affirm the judgment of the trial court.

Because Appellant was sentenced to serve his punishment in this case consecutively to his earlier conviction in Tarrant County, we assume that Appellant means that he received an improper consecutive sentence under his double jeopardy argument or that the trial court improperly stacked his sentence.